**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SEAN M. WILSON, SR.,

      Plaintiff,

    v.

MAUSER PACKAGING SOLUTIONS and
TEAMSTERS LOCAL UNION NO. 705,

      Defendants.

No. 25 CV 1185

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Sean Wilson worked for Mauser Packaging Solutions at two different facilities. At the first, he was a union steward and had no disciplinary issues except for absences on Saturdays—a religious observance that his employer promptly accommodated upon Wilson's request. When he was transferred to a different facility, representatives from Teamsters Local Union No. 705 approached Wilson about joining the Union. In response, he requested copies of the employment handbook and collective bargaining agreement, as well as information on how to opt out of union membership due to his sincerely held religious beliefs. Some time later, the Union demanded that Mauser terminate Wilson pursuant to the collective bargaining agreement. The employer complied, and Wilson sued both Mauser and the Union, alleging unfair labor practices, wrongful termination, and Title VII claims for discrimination and retaliation. The Union alone now moves to dismiss the claims against it for lack of subject-matter jurisdiction and failure to state a claim. For the reasons discussed below, the motion to dismiss is granted.

## I.      Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a complaint, I construe it in the light most favorable to the plaintiff, accepting all well-pleaded facts as true and drawing all inferences in his favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). Legal conclusions, however, are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 495 (citing *Iqbal*, 556 U.S. at 678). Put another way, the complaint must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## II.      Facts

Sean Wilson was employed by Mauser Packaging Solutions from 2018 to 2023, and successively worked at two different facilities. [29] ¶ 7.[1] Wilson is also a Hebrew Israelite, and it offends his faith to work on Saturdays. [29] ¶ 7. At the first facility,

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the operative second amended complaint, [29].

Wilson asked to be excused from working on Saturdays because he observes the Sabbath. [29] ¶ 7. Saturday work was initially optional, but it became mandatory when Wilson was chosen as a union steward. [29] ¶ 7. After assuming his new role, Wilson received several write-ups for missing work on Saturday, but all were dismissed and no further action was taken against him after he formally requested, and was granted, a religious accommodation. [29] ¶ 7.

In December 2022, Wilson was transferred to another Mauser facility. [29] ¶ 8. Shortly thereafter he was approached by representatives from Teamsters Local Union No. 705 about joining the Union. [29] ¶ 8. Wilson stated that he had not received the employment handbook or a copy of the collective bargaining agreement and would need to review those before joining the Union. [29] ¶ 8. He also asked for information on the process for opting out of union membership due to his sincerely held religious beliefs that conflicted with union activities. [29] ¶ 8. Wilson never received the requested documents or information. [29] ¶ 8.

Wilson's requests were met with hostility by both Mauser management and union representatives. [29] ¶ 9. He was bullied in the workplace due to his religious beliefs, mocked by management, and told "the company doesn't honor religious accommodations." [29] ¶ 12. Wilson was also not given a pay raise he believed he was entitled to in a timely manner and had to go to a union representative for assistance. [29] ¶ 12. The union representative confirmed Wilson's raise with management, and he eventually received his pay (but maybe only partially). [29] ¶ 12.

In July 2023, Mauser terminated Wilson's employment at the request of the Union. [29] ¶ 9. Pursuant to the collective bargaining agreement, Mauser must terminate an employee when the Union notifies it that the employee has failed to maintain membership in the Union or pay a "fair share" fee. [9] at 9. Wilson filed a charge of discrimination with the Equal Employment Opportunity Commission in August 2023 and was issued a right to sue letter in December 2024. [9] at 11.

### III.   Analysis

In his second amended complaint, Wilson brings three counts against the Union. While the counts are duplicative in certain respects, they boil down to three claims: religious discrimination, retaliation, and unfair labor practices. The claim for religious discrimination under Title VII alleges wrongful termination, hostile work environment, and failure to accommodate religious beliefs.

"Title VII prohibits employers from discriminating against employees and job applicants based on their religion." *Adeyeye v. Heartland Sweeteners,* LLC, 721 F.3d 444, 448 (7th Cir. 2013) (citing 42 U.S.C. § 2000e–2(a)). The term "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Title VII both protects employees from faith-based modifications to the conditions of their employment and creates "an implied duty to accommodate employees' religions." *Adeyeye*, 721 F.3d at 448.

4

This motion pertains to claims brought against the Union, not Mauser. "A union is liable under Title VII for discriminating against its members when performing union functions, such as job referrals, but it is not liable for an employer's actions." *Johnson v. Int'l Longshoreman's Ass'n, Loc. 815 AFL-CIO*, 520 F.App'x 452, 453–54 (7th Cir. 2013) (citations omitted). "The union is not the company, but the workers' agent in dealing with the company. If it discriminates in the performance of its agency function, it violates Title VII, but not otherwise." *E.E.O.C. v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656, 659 (7th Cir. 2003). In other words, many of the same obligations imposed on an employer under Title VII are imposed on a union, but only when it is performing union functions.

The Union exercised its right under the collective bargaining agreement to demand that a non-union employee be terminated. The second amended complaint seems to allege that the Union exercised that right because of Wilson's religion. Adequately alleging termination based on a protected characteristic is not a high bar. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). Still, the second amended complaint falls short. One issue is that the complaint is internally inconsistent. At his prior plant, Wilson was a union steward and was able to work through his religious accommodation, so it does not seem as though the Union bore any religious animus then. Wilson also solicited assistance from the Union to resolve a pay dispute in spite of his religious objections. Another issue is that the facts surrounding Wilson's religion-based employment issues are too attenuated from his termination— he requested information about opting out in December 2022 and makes no other

allegations of adverse treatment by the Union until his termination over seven months later. Even read in the light most favorable to Wilson, the second amended complaint does not contain a cohesive story that makes Wilson's claim against the Union plausible.

Wilson also alleges that he was subjected to workplace bullying and harassment by both Mauser management and Union representatives. "Title VII makes both employers and unions liable for their own conduct, not that of employees or members." *Maalik v. Int'l Union of Elevator Constructors, Loc. 2*, 437 F.3d 650, 653 (7th Cir. 2006). If an employee engages in discrimination, unions are liable only "if they know (or ought to know) what is going on and choose to do nothing (or select ineffectual steps when better ones are available)." *Id.* Moreover, Title VII "imposes the duty of providing nondiscriminatory terms and conditions of employment on employers only." *Id.* at 652. Unions do not have an affirmative duty to prevent harassment in the workplace. *Pipefitters*, 334 F.3d at 660–61. But unions may not discriminate in performing their agency functions by, for example, deciding what grievances to process based on the member's religion. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 667 (1987).

Wilson does not allege that the Union discriminated against him in its handling of harassment-related grievances. He does allege that four union representatives participated in his harassment, but union members are simply employees when they aren't acting on behalf of the Union. Nothing in the second amended complaint suggests that the Union responded to the harassment Wilson

endured differently because of his religion, or in any way discriminated in performing its agency functions on his behalf.

To state a claim for failure to accommodate his religion, Wilson must allege "that (1) the observance, practice, or belief conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance, practice, or belief to the employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment." *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024). Wilson has not satisfied the second element. Any "employee who wants to invoke an employer's duty to accommodate his religion under Title VII must give the employer fair notice of his need for an accommodation and the religious nature of the conflict." *Adeyeye*, 721 F.3d at 450.

I cannot infer from the facts alleged in the second amended complaint that the Union was on notice of Wilson's need for a religious accommodation. The only communication Wilson alleges took place with the Union after his transfer was when he "requested information regarding the process of opting out of union membership due to sincerely held religious beliefs that conflicted with union activities." [29] ¶ 8. Wilson alleges in a conclusory fashion that he was terminated for seeking a religious exemption from union membership but nothing in the complaint suggests that he ever sought such an exemption. And as noted above, nothing in the complaint suggests that Wilson's religious practices motivated the Union's treatment of him.

7

Title VII also prohibits retaliating against an employee for reporting discrimination made unlawful by the Act. "Under the Title VII framework, a plaintiff must plausibly allege three elements: a statutorily protected activity, a materially adverse employment action, and a causal connection between the two." *Gracia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1062 (7th Cir. 2021). "'Protected activity' is 'some step in opposition to a form of discrimination that the statute prohibits.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011)).

Termination is an adverse employment action. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). The question is whether the complaint alleges protected activity directed at the Union that caused Wilson's termination. The closest Wilson gets to such an action is requesting information on how to opt out of union membership due to his religious beliefs. That is not enough. Simply asking for information before any discrimination is alleged to have occurred cannot be a step in opposition to a form of discrimination prohibited by Title VII. *See Arnold v. United Airlines, Inc.*, 142 F.4th 460, 475 (7th Cir. 2025) (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018)) (Statutorily protected activity "must involve a complaint indicating that 'discrimination occurred because of … [a] protected class.'"). It may give rise to a failure to accommodate claim, but that fails for the reasons already discussed.

Wilson's complaint also refers to "unlawful labor practices" and the National Labor Relations Act.[2] Wilson's response makes no argument in support of any labor practices claim, so it has been abandoned, but I also lack jurisdiction to address it in the first place. While federal courts "may decide labor law questions that arise as collateral issues in suits brought under independent federal remedies," without a viable independent federal claim, I cannot assert jurisdiction. *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO*, 433 F.3d 1024, 1034 (7th Cir. 2006). Having dismissed Wilson's Title VII claims for failure to state a claim, I must also dismiss his National Labor Relations Act claim for lack of subject-matter jurisdiction. Jurisdictional dismissals are necessarily without prejudice. *Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006) ("A court that lacks subject matter jurisdiction cannot dismiss a case with prejudice.").

This is Wilson's third attempt to assert allegations against the Union, *see* [1], [9], [29], and in his response, Wilson does not explain how he could amend his complaint to address the arguments raised by the Union. *See* [53]. Based on Wilson's perfunctory response, amendment would be futile. And the allegations that Wilson's termination occurred many months after he asked about opting out but without, apparently, seeking an accommodation from the Union further demonstrate that Wilson cannot bring a viable Title VII claim against the Union.

---

[2] Wilson also mentions First Amendment violations. [29] ¶ 15. "The guaranties of the First Amendment run only against the federal government [and the state], not private interference." *Murphy v. Mount Carmel High Sch.*, 543 F.2d 1189, 1193 (7th Cir. 1976). No claim against the Union can arise under the First Amendment, and any First Amendment claims are dismissed.

**IV.     Conclusion**

Teamsters Local Union No. 705's motion to dismiss, [41], is granted. The claims against the Union are dismissed with prejudice (but any NLRA claims are dismissed without prejudice for lack of jurisdiction). The clerk shall terminate the Union as a party to the case. Wilson and Mauser must confer and counsel for Mauser shall file a status report proposing a discovery schedule by July 15, 2026.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 24, 2026

10